IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: SUBPOENA ISSUED TO INNOVATION LAW LAB<br><br>IN THE MATTER OF:<br><br>The State of Arizona,<br>By and Through its Attorney General, Mark Brnovich, et al.,<br><br>    Plaintiffs,<br>v.<br>Merrick Garland, in his official capacity as Attorney General of the United States, et al.,<br><br>    Defendants. | Case No.: **1:23-MI-00015-TWT-JEM**<br><br><br>Underlying Litigation:<br>United States District Court<br>Western District of Louisiana<br>Lafayette Division<br>Civil Action No. 6:22-cv-01130-DCJCBW |

**INNOVATION LAW LAB'S OPPOSITION TO THE STATE OF LOUISIANA'S MOTION FOR EXPEDITED PROCEDURE AND MOTION FOR RULE 45(F)TRANSFER OF INNOVATION LAW LAB'S MOTION TO QUASH**

Innovation Law Lab ("Law Lab") opposes the State of Louisiana's Motion for Expedited Procedure (ECF No. 4, the "Motion for Expedited Procedure") and Motion for Rule 45(f) Transfer of Innovation Law Lab's Motion to Quash (ECF No. 3, the "Motion for Transfer") (collectively, the "Motions"), and respectfully requests that this Court deny both Motions. Law Lab is a small non-profit headquartered in

Portland, Oregon with a *pro bono* representation project in Georgia assisting indigent individuals seeking asylum. Out of nowhere, the sovereign State of Louisiana served a subpoena on Law Lab to produce facially privileged documents in Georgia with an initial response deadline of less than two weeks. Then, with almost no notice or any attempt to seek to establish a briefing schedule, Louisiana filed a motion for transfer and to expedite because Louisiana misjudged the timing in its own case. Louisiana now wants to transfer the subpoena it served on Law Lab to Louisiana because it asserts that Law Lab should have its motion to quash heard there. But Louisiana is wrong. Louisiana's mistakes in waiting to the last minute to secure nonparty discovery does not mean Law Lab should be burdened or have its procedural rights truncated; Law Lab should have the opportunity to fully brief its opposition to the Motion for Transfer. And, even so, Louisiana is wrong about how Rule 45 works. The plain language of the rule is meant to protect the small nonprofit from Louisiana's pernicious litigation tactics. Louisiana's exaggerations are not emergencies warranting expedited treatment.

    Louisiana's motions should be denied because it has failed to establish good cause to expedite, and none of Louisiana's reasons for curtailing Law Lab's opportunity to respond rise to necessity or outweigh the resulting prejudice to Law Lab. Further, for the reasons set forth below, Louisiana has failed to meet its burden

to demonstrate exceptional circumstances justifying transfer of Law Lab's motion to quash.[1]

## ARGUMENT

**A.     Legal Standards**

Rule 45(f) protects nonparties, such as Law Lab, from litigating subpoenas in foreign forums, and those protections, by the rule's plain language, are intended to be hard to overcome.  After a party served with a subpoena files a motion to quash in the district where compliance is required, the court may transfer the motion to the issuing court only if the person subject to the subpoena consents or if the court finds exceptional circumstances.  Fed. R. Civ. P. 45(f).  Absent consent, the proponent of transfer bears the heavy burden of showing that exceptional circumstances are present.  *See* Fed. R. Civ. P. 45, Advisory Committee Notes.

Rule 45's default is that the court of compliance hears the motion to quash, and the Rule makes clear that transfer is not the norm and should only be done in very particular and exceptional circumstances.  Notably, when considering a motion

---

[1] Due to the accelerated timeline between Louisiana's filing of the relevant Motions and the hearing scheduled by this Court, Law Lab responds to certain primary arguments to Louisiana's Motion for Transfer in this response and intends to respond to any remaining arguments and address any questions this Court may have during the hearing scheduled on March 28, 2023.

for transfer, "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* Transfer is warranted only for exceptional circumstances. The commentary explains that even the circumstances of *disrupting* the issuing court's management of the underlying litigation is not enough to overcome its protections because even then, transfer would be appropriate "only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Jane Doe v. David Guillod*, Case Nos. 22-mc-103-JLS-PD, 22-mc-104-JLS-PD, 22-mc-105-JLS-PD, 2023 WL 2628078, at *3 (C.D. Cal. Jan. 31, 2023) (quoting Fed. R. Civ. P. 45, Advisory Committee Notes).

Moreover, when considering a motion for transfer, courts consider additional factors, "'including the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation.'" *Id*. (quoting *E4 Strategic Sols., Inc. v. Pebble Ltd. Partnership*, 2015 WL 12746706, at *3 (C.D. Cal. Oct. 23, 2015)). The moving party "bears the burden of demonstrating the existence of exceptional circumstances." *Id*. (citing Fed. R. Civ. P. 45, Advisory Committee Notes).

Local Rule 7.1(B) sets a default response deadline of 14 days after service for a party to file its opposition to a motion. A party may ask the Court to deviate from this rule for "Emergency Motions." LR 7.2(B). Under Local Rule 7.2(B), a movant seeking an expedited hearing has the burden of showing good cause for its requested relief.

## B.   Louisiana Has Not Shown Good Cause for Expedited Proceedings.

Louisiana has not met its burden for expediting these proceedings. The "emergency" alleged by Louisiana is a problem of its own making. And the timing dilemma that Louisiana has created for itself is no reason to impose additional burdens on Law Lab, a small immigration assistance group that is not involved in any way in this litigation. *See* Memorandum in Support of Law Lab's Motion to Quash, ECF No. 1-1 at 2-4, 19-20.

*First*, as detailed in Law Lab's Motion to Quash, Louisiana was on notice by no later than January 17, 2023, that it must complete jurisdictional discovery *of its own alleged harm* by March 24, 2023, in a case Louisiana filed. Instead of completing its due diligence of its own standing before filing its lawsuit, Louisiana waited until just before discovery closed to serve nonparty Law Lab. Louisiana delayed until February 17 to notice Defendants of its intended subpoenas, then waited *another* ten days to formally serve Law Lab with its subpoena on February

27. ECF No. 1-1 at 2 6-7. At this point, fewer than four weeks of discovery remained in the underlying litigation. Law Lab should not be prejudiced by responding to an expedited subpoena when Louisiana waited to the 11th hour to serve it.[2] *See id.*

Despite its limited resources, Law Lab secured *pro bono* legal services on short notice to comply timely with its obligations under the Federal Rules and the Local Rules of this Court—the district Louisiana chose for compliance. Law Lab timely and properly moved this Court to quash the subpoena. Louisiana delayed yet another week, then filed its Motion for Transfer and the Motion for Expedited Procedure to solve for its failure to properly serve discovery its own case.

*Second*, Louisiana's Motion fails to set forth in detail why expedited procedures are necessary. *See* N.D. Ga. Rule 7.2(B). Louisiana reasons that, because the issuing court "may decide" other motions to quash, before this Court rules on Louisiana's motion for transfer, the issuing court may not "fully realize the benefits" of a hypothetical transfer. But the pendency of motions in another district is hardly an emergency; it is routine practice. Indeed, the Federal Rules contemplate this very timeline. *See* Fed. R. Civ. P. 45, Advisory Committee Notes. In deciding whether to transfer a motion to quash, the court where compliance is required may

---

[2] Before the parties negotiated a later date, the Subpoena originally demanded Law Lab's compliance in Atlanta within fewer than ten business days.

consider concerns about disrupting the issuing court, which may occur, for example, where "that court has *already ruled* on issues presented by the motion." *Id.* (emphasis added). Still, transferring a motion to quash "is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id.* It is hardly a disruption to the issuing court to allow Law Lab its procedural rights to fully brief and argue the motion for transfer in this Court.

Moreover, deciding Louisiana's motion for transfer in due course per the Local Rules would not prejudice Louisiana's position in the underlying litigation. Louisiana admits in its motion for transfer that its jurisdictional-discovery deadline has now been extended until May 23. Any purported urgency is exaggerated at best, if not engineered to further burden non-party Law Lab.

In contrast, Law Lab would be unduly prejudiced by expedited proceedings. Faced with the short turnaround required by the subpoena, Law Lab worked around the clock to prepare and timely file a motion to quash based on authorities in this District, the court where Louisiana required compliance. Expediting proceedings on Louisiana's motion for transfer would deprive Law Lab the full opportunity afforded under the Local Rules to defend its interests in obtaining local resolution of its motion to quash.

### C. Louisiana Has Failed to Demonstrate that Exceptional Circumstances Exist to Warrant a Transfer.

Louisiana has not met its burden of demonstrating that exceptional circumstances exist to overcome the protections of Rule 45, and therefore its Motion for Transfer should be denied.[3] The text of Rule 45(f) and relevant Advisory Committees notes "make clear … that subpoena-related motions should be heard in the court where compliance is required, unless the proponent of transfer demonstrates that exceptional circumstances exist." *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 406 (N.D. Ala. 2014). The existence of exceptional circumstances is a threshold matter; "exceptional circumstances must first be found before any balancing takes place." *Id.* at 407.

Everything Louisiana asserts as "exceptional" is, actually, routine and normal. First, the pendency of motions in another district is not an exceptional circumstance—it is routine practice. The court where compliance is required may consider concerns about disrupting the issuing court, which may occur, for example,

---

[3] As noted *supra* fn. 1, Law Lab is responding to Louisiana's primary arguments in this response, and intends to address Louisiana's Motion for Transfer in further detail during the hearing scheduled by this Court on March 28, 2023. The local rules, which provide for 14 days to file a response to a motion, are intended to provide litigants like Law Lab the opportunity to fully formulate and argue their case before the Court. N.D. Ga. Rule 7.1(B). Only in emergencies, which this plainly is not, should those fully promulgated local rules be shortened.

where "that court has *already ruled* on issues presented by the motion or the same issues are likely to arise in discovery *in many districts*." *Id.* (emphasis added). Here, there is no concern over issues arising in *many* districts; there are two courts deciding motions to quash subpoenas requiring compliance in their respective districts—the Louisiana Court is deciding motions concerning Louisiana-based immigration providers, and Law Lab, which has a satellite office in Georgia, has its motion pending in this Court. If "many" is an exceptional number, surely one or two is routine.

The issuing court has not already ruled on issues presented by Law Lab's motion. Even if Law Lab's motion to quash raises "concerns of relevance that are almost certainly in common with the myriad discovery disputes in the underlying litigation, … [t]he risk of overlapping future rulings, in the name of judicial economy or otherwise, does not constitute an exceptional circumstance." *Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014).

Even if the Western District of Louisiana decides the Louisiana motions before this Court can decide Law Lab's motion to quash, this does not rise to an exceptional circumstance. *See, e.g., Orix USA Corp. v. Armentrout*, No. 3:16-MC-63-N-BN, 2016 WL 3926507, at *4 (N.D. Tex. July 21, 2016) ("[T]o the extent that

[the issuing court] has already ruled on an issue related to those presented by the motion to compel, the Court will have the benefit of that ruling.").

Second, Louisiana overstates the complexity of the underlying litigation. To be sure, the underlying litigation involves more than a dozen State plaintiffs. But it does not rise to the level of complexity that would make this Court incapable of deciding the routine and discrete issues of privilege and undue burden raised in Law Lab's motion to quash.[4] The underlying case began less than one year ago, and Defendants have sought discovery against Plaintiffs to demonstrate Louisiana's standing to bring the lawsuit under the facts it alleged. (Doc. No. 3-1 at 4-5)

---

[4] To the extent these issues touch relevance, the Northern District of Georgia is not any less equipped to decide them. *See, e.g., Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014) ("The relators are likely correct that some of the issues that will arise in resolving the motions to quash will also arise in the underlying litigation, because SouthernCare's motion in particular raises concerns of relevance that are almost certainly in common with the myriad discovery disputes in the underlying litigation. The court finds, however, that such overlap is an insufficient reason, standing alone, to warrant transfer of the motions."). *See also* Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 45 (2015 ed.) ("Lurking underneath [the] comments [to Rule 45] is the belief that most disputes involving discovery from nonparties present garden-variety issues of relevance, privilege, and burden that do not require deep familiarity with the case because they call only for the application of everyday discovery principles and ordinary judgment").

Courts require much more to find complexity. *See, e.g., The Dispatch Printing Co. v. Zuckerman*, No. 16CV80037BLOOMVALLE, 2016 WL 335753, at *3 (S.D. Fla. Jan. 27, 2016) (finding exceptional circumstances where the underlying case had been pending for almost ten years, had a PACER docket totaling 1,015 entries, and subpoena at issue sought third-party evidence of activities of Defendant's employee, who had fled the country for several years before being charged with criminal contempt). Indeed, the cases cited by Louisiana all involved complex legal theories and lengthy, late-stage proceedings that simply are not present here. *Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 518 (S.D. Fla. 2021) (where Plaintiff's case had been pending for five years and was related to several other cases filed in the same district court "involving highly specialized oil-and-gas class action claims"); *XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 11 (D.D.C. 2014) (granting transfer where the underlying litigation, a "large and complex patent infringement suit," involved patent infringement claims and antitrust counterclaims and had reached the summary judgment stage); *Duck v. United States Sec. & Exch. Comm'n*, 317 F.R.D. 321, 325 (D.D.C. 2016) ("[t]he underlying case has been pending for over four years, and involves complex securities issues").

Finally, Louisiana wrongly describes the operation of Rule 45. It improperly cites its own assessment of Law Lab's burden as an exceptional circumstance

meriting transfer. (ECF No. 3-1 at 6-7). Specifically, Louisiana argues that transfer will not unduly burden Law Lab because Law Lab "is no stranger to litigation in the issuing court" and because Law Lab is not "the sort of 'local nonparty' that Rule 45(f) is most concerned about." (ECF No. 3-1 at 7). But that is exactly wrong as to Rule 45's requirements. "The lack of a burden imposed on the nonparty by transfer is not itself an exceptional circumstance and is insufficient to warrant transfer." *Woods ex rel. U.S.*, 303 F.R.D. at 407. "[I]n other words, exceptional circumstances must first be found before any balancing takes place." *Id*. Thus, Louisiana's assessment of Law Lab's potential burden is irrelevant to whether exceptional circumstances exist. However, as detailed below, even if exceptional circumstances existed here, they would not outweigh Law Lab's interests in obtaining local resolution, despite Louisiana's deliberate mischaracterization of the actual burden at stake.

**D.    Even if this Court Finds that Exceptional Circumstances Exist Meriting Transfer, Louisiana's Interests Do Not Outweigh Law Lab's Interests in Obtaining Local Resolution.**

In the event this Court finds that exceptional circumstances exist, contrary to Louisiana's arguments, transfer would unduly burden Law Lab, and as such, Louisiana's interests do not outweigh Law Lab's interests in obtaining local

resolution of its Motion to Quash (ECF No. 1).  Contrary to Louisiana's misleading argument, transfer will certainly unduly burden Law Lab.

First, Louisiana contends that Law Lab "is quite unlike the truly local nonparty that Rule 45 is most concerned about[.]" (ECF No. 3-1 at 16).  Louisiana cites the District of D.C.'s opinion in *XY LLC v. Trans Ova Genetics, L.C.* to support its narrow interpretation of "local nonparties" and describes the court's opinion as generally "distinguishing 'an individual resident of the local jurisdiction' from other nonparty subpoena recipients."   (ECF No. 3-1 at 16).   However, Louisiana mischaracterizes the court's analysis, which specifically distinguishes between under-resourced, individual non-parties from large, national, for-profit corporations. *See XY LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D 10, 12 (D.D.C. 2014).  In finding that transfer was warranted, the *XY, LLC* court reasoned:

> Intrexon [the nonparty] is a large corporation that is in the process of acquiring Trans Ova [defendant to the underlying lawsuit]. XY's Mem. in Supp. of Mot. to Transfer 1; *Id.* Ex. 4 (Intrexon press release announcing definitive agreement to purchase Trans Ova for $110 million in cash, stock and other payments). While not a party to the Colorado litigation, Intrexon has a direct economic interest in Trans Ova's counterclaims. … It also has been involved in the formulation of Trans Ova's settlement position. … Intrexon's size and ongoing involvement in the underlying litigation make the burden of litigating this dispute in the District of Colorado minimal.

*XY LLC*, 307 F.R.D at 12.  The *XY LLC* court further cited the Central District of California's opinion in *In re Subpoena to Kia Motors Am., Inc.*, No. SACV-14-315

JLS, 2014 WL 2118897 (C.D. Cal. Mar. 6, 2014), explaining that the compliance court in that case "granted a motion to transfer under similar circumstances to those here, concluding that doing so 'would not significantly burden [the local party]'—which was a national corporation rather than an individual resident of the local jurisdiction..." *Id*.

Unlike the large, national, for-profit corporations distinguished in the cases above, Law Lab is a small, non-profit organization which has been forced to engage in this litigation in order to adequately assert its rights against Louisiana's efforts to subpoena privileged and confidential documents. (*See generally* ECF No. 1). While it is true that Law Lab seeks to reach several geographic areas in order to provide services to asylum seekers and applicants, Law Lab's staff consists of only 30 employees, (*see* ECF No. 1-1 at 19) and, unlike the immense resources and funds available to national, for-profit corporations, as a small non-profit, Law Lab has severe budgetary constraints. (*See* ECF No. 1-1 at 20). Furthermore, although Law Lab was able to obtain *pro bono* counsel, this fact does not support Louisiana's contention that Law Lab has the resources "to litigate anywhere in the country," (ECF No. 3-1 at 16) nor does it support the argument that Law Lab is "quite unlike the truly local nonparty that Rule 45 is most concerned about". (*Id*.)

Louisiana's characterization of Law Lab as having "ready access to … considerable resources" due to its *pro bono* counsel is misleading, and the cases cited by Louisiana do not support its argument that transfer will not unduly burden Law Lab. For example, in *Lipman v. Antoon*, a state prisoner brought an action against Securus, an inmate calling services company, alleging unjust enrichment and violations of the Arkansas Deceptive Trade Practices Act. *Lipman v. Antoon*, 284 F. Supp. 3d 8, 8-9 (D.D.C. 2018). The state prisoner, Mr. Antoon, served a subpoena on Mr. Lipman, a non-party attorney from the law firm that represented Securus, the defendant company. *Id*. at 9. After Mr. Lipman filed a motion to quash the subpoena, Mr. Antoon moved to transfer the motion to quash to the Western District of Arkansas, where the underlying litigation was pending, and where Mr. Antoon's case was the fourth of four, related inmate calling services cases before the judge assigned to his case. *Id*. In concluding that the burden on Mr. Lipman in granting Mr. Antoon's motion for transfer was "negligible," the court reasoned:

> Mr. Lipman has not explained how he would be burdened by litigating the motion in the Western District of Arkansas. … Further, Mr. Lipman, Chairman of Morgan Lewis, is represented by his own firm, the same 'global' firm that represents Securus [the defendant in the underlying litigation]. … In this circumstance, 'the general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes is significantly reduced' because Mr. Lipman is represented by a firm familiar with this litigation and the issuing court.

*Id.* at 11.  Unlike in *Lipman*, Law Lab is not in any way related to the underlying litigation.  Further, unlike in *Lipman*, where the nonparty who was issued a subpoena was the chairman of the international law firm that represented defendants, Law Lab is a small organization with minimal resources.  (ECF No. 1-1 at 2, 19-20).  Louisiana cites no case for its insinuation that Law Lab's ability to secure *pro bono* counsel somehow transforms Law Lab into the equivalent of an international corporation.

Second, in support of its contention that Law Lab is "well-acquainted with the issuing court," Louisiana cites Law Lab's efforts to intervene in the Title 42 litigation against the U.S. Centers for Disease Control Prevention ("CDC") pending in the Western District of Louisiana. (ECF No. 3-1 at 17).  However, contrary to Louisiana's assertions, Law Lab's attempt to intervene in that case does not weigh against Law Lab.  Law Lab sought, and was denied, intervention in the Title 42 litigation against the CDC for a *discrete and limited purpose*—to ensure that any injunctive relief entered by the court should be geographically limited to only the plaintiff states, rather than nationwide, due to the harm such injunctive relief would cause to Law Lab's clients outside and beyond the jurisdiction of Louisiana.  (ECF No. 3-5, Exh. T at 2).  Not only is the referenced litigation separate and independent from the underlying litigation at issue here, but Law Lab's efforts to intervene forced

Law Lab to divert significant resources away from its pre-existing mission-driven work (ECF No. 3-5, Exh. T at 1-2).

Indeed, the burden that would be placed on Law Lab if this Court grants the Motion for Transfer would not be a "[m]ere 'theoretical inconvenience'" for Law Lab. (ECF No. 3-1 at 18). Law Lab has already expended significant resources, which are limited to begin with, in order to assert its rights since the subpoena at issue was served. Transferring the Motion would exacerbate the undue burden already imposed on Law Lab.

## **CONCLUSION**

For the reasons stated above, Law Lab respectfully urges this Court to deny Louisiana's motions for expedited procedure and transfer. Alternatively, Law Lab respectfully requests that this Court deny Louisiana's motion for expedited procedure and set a formal briefing schedule that allows Law Lab to supplement this response with a memorandum fully responding to the motion for transfer, as Local Rule 7.1(B) contemplates.

This 28th day of March, 2023.

| | |
|---|---|
| **KILPATRICK TOWNSEND & STOCKTON LLP**<br>1100 Peachtree Street, Suite 2800<br>Atlanta, Georgia 30309-4530<br>(404) 815-6500<br>Fax: (404) 815-6555<br>TCaldas@kilpatricktownsend.com<br>GReddy@kilpatricktownsend.com<br>BTRichardson@kilpatricktownsend.com | /s/ Bennett T. Richardson<br>Gautam Reddy<br>Georgia Bar No. 757546<br>Tamara Serwer Caldas<br>Georgia Bar No. 617053<br>Bennett T. Richardson<br>Georgia Bar No. 974586<br><br>*Attorneys for Innovation Law Lab*<br><br>OF COUNSEL:<br><br>Emily Greb (*pro hac vice* pending)<br>Nancy Cruz (*pro hac vice* pending)<br>Kaitlin Dryden (*pro hac vice* pending)<br>Perkins Coie LLP<br>33 East Main Street, Suite 201<br>Madison, WI 53703<br>Phone: (608) 663-7460<br>Fax: (608) 663-7499<br>EGreb@perkinscoie.com<br>NCruz@perkinscoie.com<br>KDryden@perkinscoie.com |

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document filed with the Clerk of Court has been prepared in 14 point Times New Roman font, in accordance with Local Rule 5.1(C).

Dated:          March 28, 2023.

/s/ Bennett T. Richardson
Bennett T. Richardson

# CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2023, I electronically filed the within and foregoing **INNOVATION LAW LAB'S OPPOSITION TO THE STATE OF LOUISIANA'S MOTION FOR EXPEDITED PROCEDURE AND MOTION FOR RULE 45(F)TRANSFER OF INNOVATION LAW LAB'S MOTION TO QUASH**, with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated: March 28, 2023

| | |
|---|---|
| **KILPATRICK TOWNSEND & STOCKTON LLP** | /s/ Bennett T. Richardson |
| 1100 Peachtree Street, Suite 2800 | Gautam Reddy |
| Atlanta, Georgia 30309-4530 | Georgia Bar No. 757546 |
| (404) 815-6500 | Tamara Serwer Caldas |
| Fax: (404) 815-6555 | Georgia Bar No. 617053 |
| TCaldas@kilpatricktownsend.com | Bennett T. Richardson |
| GReddy@kilpatricktownsend.com | Georgia Bar No. 974586 |
| BTRichardson@kilpatricktownsend.com | *Attorneys for Innovation Law Lab* |